We are if you are. Excuse me? We're ready if you are. Yes, sir, I am ready to go and my name is James Phillips and I appreciate the opportunity to be to appear on behalf of Mr. Holmes. Now Mr. Holmes was charged in a drug conspiracy and just just to give it a quick overview this drug conspiracy involved a Mexican and an American component. The Mexican role would be to bring the drugs in to a central location which is just outside of Little Rock and then the Americans would distribute it to the customers and so when I say Americans and Mexicans that's kind of what I'm talking about when we talk about this drug conspiracy. So my client you know sat in jail for almost a year and about a week before trial we got a notice from the government that they intended to use this drug icon expert, Mr. Almonte. They're going to bring him in from Texas and tell us and tell the jury about you know drug icons with drugs you know Mexican drug cartels and so we had a hearing or the judge heard the testimony of Mr. Almonte and and it that I want to make sure the court understands it I'm regards the narco saint testimony fails because the court himself found that the testimony of Mr. Almonte was not probative of the conspiracy. It wasn't probative of the conspiracy at all and it did not apply to Mr. Holmes my client. Second the qualification to assist the fact finder. Well they say though that it was it was significant to the extent that they had to show that there was I Possibly. Possibly. Except. So what's wrong with that? Well well I'll get to that part. The second part here is the qualification and if if you if Almonte himself testified that his analysis does not even yield a reasonable suspicion so that is and he testified that that reasonable suspicion is what is what might not even give a law enforcement officer much more than just the and discuss something with somebody. So if he sees a Mexican a picture of Mr. Malverde on a dashboard perhaps he might have some reason to think he might want to talk to this person further but not a jury with reasonable doubt. Now as far as the reliability the testimony itself was not based upon any form of criteria that's objective to it being to it being you know reliable in any way at all. There's there's no it's not peer-reviewed the testimony is not there's not published anywhere. There's nothing to indicate that it's reliable and or it's even effective. As far as the expert himself he's self-appointed. He's not he is not he hasn't gone to a university and gotten PhDs and and that he's published himself and he does seminars but it's not he is not there's no objective criteria which would support either his his opinion or his qualifications to give that opinion. So all three areas relevance, qualification, and reliability fail and interestingly enough Almonte was the first witness in this huge conspiracy trial. I mean it just it defies belief that that that could that that could not be fair to Mr. Holmes especially since after being asked Judge Moody did not give a limiting instruction as to Mr. Holmes. So can you answer my question about the relevance? I'm sorry judge. You said you wanted to skip ahead. Well you mean about how it applies to the Mexicans? Yeah the government I think argues that it was relevant to establishing the existence of the Mexicans conspiracy. So what's wrong with that argument? Well that's what I was trying to say was is that Judge Moody held that it was not relevant to a conspiracy. He that was that was his that that's what that was his finding at the end when when the matter was discussed outside the hearing of the jury. Why did he say he let it in then? Well I'm a little unclear about that judge. I'm a little unclear especially as to my client who's American. He's not he has nothing to do with the Mexicans. Well but the argument is he joined the Mexican. That's correct. That is correct. But there's no indication that he was ever at their house where all these supposed icons. So it is important that the government has to to establish that there is in fact this Mexican conspiracy right that to which your client joined if it's gonna make its case. Well I'm not sure by what the court means by important. They when when they this this was a very extensive investigation that lasted for a long period of time. They obtained a search warrant went to the Mexicans location where they lived and dug up hundreds of pounds of methamphetamine and and various other paraphernalia related to drug trafficking. What do they need to prove a conspiracy? I mean that's that you're saying there was enough there to establish the conspiracy they just didn't need. They didn't need this. Okay yes it's a cumulative argument. Yes sir yes sir. So and I'd also like to Now the with the American conspiracy there were what six or eight witnesses who testified. None of them implicated my client as far as being part of the conspiracy. That he joined the conspiracy. That he knew the purpose of the conspiracy. That he furthered the purpose of the conspiracy. Is it Daniel Henry enough buying from him? Daniel Henry testified. He's the he's the head conspirator. His testimony was very his testimony was was very unclear as to as to what it was. He said he gave my clients some drugs and he said that that that he that that it was far as the drug ledger. He said that the drug ledger could have been a loan. He was ambivalent about his testimony. But you're right that was the only thing that even. Well the Maldonado's ledger. How about the Maldonado's ledger? It's got his nickname in there. Pepe. Right Pepe. Isn't that enough? Enough. Enough to connect him to the conspiracy and enough to get to a jury and leave it to the jury to decide whether there's a whether there's a conspiracy. Your honor there is a there was a book with numbers and a name written on it that nobody testified to. That did not match up with any kind of transactions that my client had. Especially in view of their with the conspiracy and I'm running into my time here but especially running into the Mexican part of the conspiracy where you have 10,000 texts and telephone calls between and among all these people setting up these drug transactions. My client is in four of them and then when you contrast that you know the one transaction my client did with that with that Alicia person where he did a delivery which he did not contest that he did that. There were numerous texts and telephone calls setting up one transaction and yet of the 10,000 calls there's four with the Mexicans and they talk about red carts and stuff like that. It's ambivalent. So I disagree with that your honor. Anyway I'm gonna save whatever time I have left. Good morning my name is Rick Holloman. I represent Juan Castaneda Rendon. At Al whatever but his last name is Rendon. The only issue that we've raised on our appeal is the testimony of Mr. Almonte. I'm gonna try not to repeat some of the things that Mr. Phillips just said. And your honor I'm listening to your question of him about the relevance. It caused me to reflect back on something so elementary in this case that I hope I'm not misspeaking when I say this. If and I look since I don't have the indictment in my hand and I'm looking at the statement of the case that was put in the brief of the government and they make reference to the investigation of the Gamaros family. I say yeah the Gamaros family was doing this. My understanding and recollection of the indictment which I was in this case from the get-go if you will the beginning represent Mr. Rendon. The facts and evidence that they presented and had was what took place in Arkansas. We had the Maldonados that had this place that they lived at. They had the methamphetamine at the Maldonados. In the theory of the government's case it was then distributed to Mr. Henry who then distributed to other various individuals. There was no allegation in the indictment that I can recall or any proof even remotely coming into play that somehow or another there was going to be a connection to Mexican in Mexico. We had the Maldonados here. Obviously my client Mr. Rendon is of Mexican descent but all the facts and circumstances concerning the alleged conspiracy took place right there in Arkansas. That buttresses my point on the issue under the three criteria that we have to look at as to whether or not Mr. Almonte's been admitted is to the relevance to it. That's why when you're asking didn't the government need his testimony to make the Mexican element? That troubles me because I don't even think that was a part of their theory of their case. All the conspiracy took place there and here in Arkansas with the drugs that was here. Again I wish I had the indictment here to see if they actually said that because they didn't have any proof of that. Well I could be wrong. Right and I could be too as I'm saying. It may just have been a miscommunication perhaps between us but I think what we were referring to was the Maldonado connection. Okay. The Mexican aspect. Okay. That's what I understood. Thank you for saying it because what my question for and what I was gonna start out with is the most important thing to me as a trial lawyer is the relevance of this man's testimony. As to these facts. He basically. Let me ask you this in light of our discussion with Mr. Phillips about how Judge Benton said it basically was cumulative. You may or may not agree with that and you can explain but tell me why this would have even if erroneously admitted why it was prejudicial. Mr. Almonte testified about the cartel. He used the word cartel on his testimony about his qualifications deals with things that he did down in Mexico and of course I would don't want to take the time to challenge his qualifications under Kumo and Dauber. If you allow this testimony like this and I'll try to answer it this way of an expert in these factual circumstances it seems to me that it's going to be opening up with just a Pandora's box of the type of experts of people that are going to be coming in if Mr. Almonte can do it. He actually said on multiple times when we were cross-examining what are you here to give an opinion about and he would not and could not answer it on multiple times during our cross-examination of him. If he is someone who can talk about narco-saints and Malverde and he said on multiple times on his cross-examination that he's not saying everybody that has Malverde pictures and icons are drug dealers. He's not and one of the most important things that he said was the exchange that he had with Mr. Hendricks who's not here because his client had a directed verdict on page the exchange between page 120 and 121 of the transcript. In answer to Mr. Hendricks' question he says everybody's got an icon that doesn't make them a drug trafficker and he said that's correct and the question is it could result in probable cause. Did you tell that to the San Antonio Express News because he was cross-examining him about an article in the paper and this is what Mr. Almonte said. No, I think the way it's read here, I always say in my seminars that none of these things are probable cause in themselves. I said it could lead to reasonable suspicion or depending on the investigation but none of these things are probable cause in and of themselves and it just seems to . . . Excuse me. I think Judge Kelly. I just wanted to sort of in that theme, we talked a little bit about what the district court's ruling was, that it wasn't relevant to the conspiracy but it seemed the district court said, well, this is the kind of evidence that I admit is indicia of drug trafficking. I don't know if they went so far as to say tools of the trade. Do you see it that way? Do you believe the . . . I'm trying to remember back to when we were actually doing that argument. I'm not real sure what Judge Moody was alluding to. I do not want to run from the question of is it cumulative and what difference does it make. It is so prejudicial for twelve people on a jury to hear evidence in somebody who holds himself as an expert even though he never really directly addresses the facts of this case other than what he saw in pictures that implies connection of the conspirators with the drug cartels in Mexico. If that's not a prejudicial effect outweighing the probity value, I really don't know what it is. It's not so much that I want to run from, well, you got enough evidence anyway. That concerns me in this case. If this man's testimony is allowed in this case and it's sustained, just because they have all this other evidence of the conspiracy, it is so overwhelmingly prejudicial in my opinion to someone having to deal with the facts that they have that it cannot . . . there is no probity value in light of his testimony of what he says. Things like this don't even rise to a reasonable suspicion. All right. Mr. Wallerman, your time has expired. Thank you very much. I appreciate it. I didn't reserve any time for rebuttal. Thank you, Your Honor. Very well. Good morning, Your Honors. Counsel, may it please the Court, my name is Alex Morgan and I'm here on behalf of the United States of America. I'd like to begin by addressing some of the points that counsel have made. First and foremost, this is not an 11th hour witness. A notice of intent to call him as a witness was filed on September 20th. The trial did not begin until more than two weeks later. The first dispute about this testimony arose that very day. There had been no Daubert challenge filed. As it relates to relevance, Your Honor was correct to point out, yes, Judge Moody said, listen, this doesn't go to conspiracy inasmuch as it speaks to two people coming together and having a meeting of the minds. What it does speak to, it is probative on the question of drug trafficking. This was a conspiracy to distribute methamphetamine and to possess with intent to distribute methamphetamine. For that reason, it had significant relevance. There's a lot of discussion also about, yeah, but it's a far cry from scales and cash and that sort of tool, you know, guns, the sort of tools of the trade. I would actually disagree with Your Honor on that point. I think it's easy for someone perhaps, Mr. Phillips pointed out in his brief, well, you don't need these things to distribute methamphetamine, to distribute drugs. True, you don't need scales or baggies or radio detectors or security cameras either, but some people choose to rely on them. And sure, me personally, do I believe in Jesus Malverde? Of course not. Do I believe in Santa Muerte? No. But some people do. And for these people, praying to these quasi-saints, now granted, they're not recognized by the Catholic Church, and Mr. Almonte was very careful to point that out on direct, which goes against any finding of prejudice in a connection to organized religion, so that, you know, if we have a Catholic juror, for example, they're aghast at the idea of these people corrupting their revered saints. No, these are quasi-religious figures. Counsel, let me ask you a different one. In state court, if the prosecution starts out with character witness, it's reversal. Did you know that? No, I do not. Yeah, true story. The government cannot start out with character witness against the defendant until the defendant in some way raises character. Why isn't this just kind of character evidence? Because it's indicia of drug trafficking. It's tools of the trade. He was careful to point out several things. First off, not everybody that I met and I interviewed when I went to Mexico four or five times and visited the shrines, visited the churches, took place in the processions, not everyone that I met, interviewed, was involved in criminal activity or drug trafficking. A lot of them were just poor people because this guy was duly recognized. Well, let's be careful to point out, he may or may not have existed, so we'll put that out there, but he was careful to point out that this legend was first revered as an angel of the poor, so it could speak to one thing or the other, and he was careful to point that out. Listen, if I saw this in your house, would I assume that you were a drug trafficker? Of course not. It could be one thing or the other, but it has that potential significance. If I walk into a location and I observe baggies, scales, and a security camera, all those things could be present at a butcher shop, but if the butcher shop has six pounds of meth buried in PVC pipe in the bath, all of a sudden the presence of some of these things perhaps takes on a different component, and the same is true here, and so counsel for the defense has made several points. They talk about, well, this fact in and of itself doesn't constitute probable cause. In and of itself does not constitute reasonable suspicion, but that's not the benchmark for relevance. I can read the testimony, but can you tell me shortly, if he says it doesn't necessarily, is he able to, in X percent of the times, I mean, how does he link it to drugs? Observation, and this is specialized testimony from a law enforcement witness with a unique background who's consulted on hundreds of cases, has been himself personally involved in more than 50 cases where large-scale drug trafficking was accompanied by shrines to Jesus Malverde, Santa Muerte, and some of these other figures, and Daubert speaks to capital S scientific testimony. The factors that Daubert lists in judging reliability are non-exclusive. Daubert itself concedes that point. In as much as there was any confusion, Kumho-Tyre comes a couple years later and reaffirms, yes, these are non-exclusive factors that aren't going to apply in every case. It's not rigid. There's considerable leeway for the trial court. Kumho-Tyre says that. Daubert itself says, listen, if you have a problem with expert testimony, the most traditional and most effective way to get at it is through vigorous cross examination, and that's exactly what happened in this case. What factors are met for expert testimony, would you say? Well, going front to back, let's start with qualifications. We've got a person here who spent 25 years on the El Paso Police Department, 13 of which- He's an expert law enforcement officer. Understood, yes. Yes. What we're really talking about is not whether he's an expert in a traditional drug trafficking sense where he can testify about the things that Judge Grunder has referred to, but we're really talking about a very narrow area of expertise that he created himself with four or five trips to Mexico. Can you give us a sense of the expert witness standard? Well, quoting Judge Learned Hand in Kumho-Tyre, the Supreme Court talks about the power of observation and the power of specialized experience. Here we have a guy who spent a quarter of a century working on drug cases along the border. In the course of that work, comes to see this image appearing with greater and greater and greater frequency. Goes out, interviews people during proffers, investigations that he's running himself, proceeds to follow up in Mexico, participating in, we'll call them religious functions, processions. I'm sorry to interrupt, but just sort of getting to the point, is it your position that this is such overwhelming experience in this limited area that we can overlook things like no peer review articles, no other folks who also have this expertise? Because I think he testified. I don't know of anybody else who's doing this. Is that sort of your position? Is it one of those things where we can say, well, there's so much in this category that we really can discount these others? I think there are a lot of people that are doing this actually, and in as much as peer review or general acceptance is a factor, I would suggest that he is generally accepted. This is a person that law enforcement actively seeks out to train them about the potential significance of these people. Pardon me for interrupting your colloquy, but didn't he testify he was the only one doing this? To help me. I thought that was an overstatement. He said, I'm the only one that I know of. Oh, okay. I'm the only one that I know of. Proceed with Judge Kelly. Yes. That was just too glaring. I think it was all in the briefs. Go ahead. Sure. But there are other people that testify to this. One, for example, a simple police officer in Lincoln, Judge Kopf, in the Rivas case, he said, listen, I want to put this out there because this issue is going to become more and more prevalent. And this police officer with 13 years experience in Lancaster County, Nebraska, has seen this with increasing regularity. And just like a police officer who sees baggies and scales and security cameras and starts to connect the dots, this police officer, on the basis of his observation, in 13 years of experience, yes, he was qualified to testify that there is a potential nexus here to drug trafficking. Potential, mind you, because Judge Kopf notes that in that case, the police officer was careful to note, yes, this person could also be revered in his capacity as the angel of the poor or the patron saint of the poor. Getting back to your point, I don't believe there's a double-blind study confirming the relevance of baggies or scales or security cameras. I mean, these are purely scientific factors that Dauber is using. Those don't necessarily apply in a case like this where we're going on specialized knowledge. I think . . . Do you think there's a difference between a scale that you actually physically use? An expert can get on the witness stand and testify, this is how a scale is used in drug trafficking. The jury may not have understood that, but here's how the baggies are used, et cetera, et cetera. When you're talking about the saints, is there a difference or am I making a difference that doesn't matter when I'm thinking the saints, this is how they think. This is their religious belief or, as you describe it, quasi-religious belief. Is that a difference here that matters for purposes of the relevancy of the testimony? I think that's exactly what he did, though. He didn't say, hey, they're these saints and we see them where we see drug traffickers. He said, here's this saint, here's his background, this is how a drug trafficker might use him. This is a person who, for some people, is a representative or a protector for those engaged in illegal activity. How does that help you? Well, you pray to this person, you make offerings to this person, you seek out their protection, and they intervene on your behalf when it comes to law enforcement. That's the importance of roses or tobacco or liquor, all of which were observed on the scene in front of the shrine. This wasn't a one-off piece of evidence. Let me remind you that there were seven images of Jesus Malverde in this house, and an eighth tattooed on this guy's back. At that point, I think we've proceeded beyond something that he just put around the house because he thought it looked cool. For him, it served purpose. On whose back? On whose back? In whose house? Primo, Christian Maldonado, the central figure in this conspiracy. But it's relevant for us because we also have a drug ledger. What we submitted was a drug ledger, which the defense submitted was just a black book with some numbers and names in it. Wasn't there a ton of other evidence, though, of the Maldonados being drug dealers? Well, that evidence came from cooperators and meth heads. The government's put in the position where you have these 12 strangers sitting in a box. You have no idea what they're thinking. You have no idea what their biases is. They're getting an instruction from the court that says, look, guys, you're about to hear testimony from someone that's pled guilty in this case, who's cooperating with the government, and is receiving or is likely to receive a tangible benefit for that cooperation. So take this for what it's worth, i.e., feel free to take this with a grain of salt or disregard it altogether. Or credit it. They can credit it, too. Absolutely. Most of our cases, they appear to credit it, by the way. Proceed. Absolutely, Your Honor. But we don't really know whether that's going to be a reasonable doubt. As you're well aware, when we're down in that setting, reasonable doubt is a significant hurdle. And we're put in the position to do the best job we can to overcome that hurdle. So when we're faced with an argument, listen, you heard this guy on the wire trying to trade go-carts for wood. Well, that's just what it sounded like, guys. He was hard luck. He needed some wood to build this house and finish his work. We had to rebut that argument. How do we do it? Well, this ledger is found 10 feet away from a shrine to a potential narco saint. It's found a couple hundred yards away from where we discovered methamphetamine, hidden in tubes. There's extraneous evidence outside the testimony of cooperators. I mean, I think there are a number of different ways that you can come at this problem. And we did the best that we could. To the extent that the argument is to me that you're risking, and the court might not have known it at the time because it was apparently the first witness, but you're risking a likelihood of confusing the issues when you have such overwhelming evidence, the math and all that. I don't know. Maybe it's a trial. Maybe it's a strategy type thing. But it seems to me to be a risky thing to lead with anyway. Understood. I would just remind the court that where we find ourselves, procedural posture matters. We're on an abuse of discretion standard, and that is a highly deferential standard. And the judge was asked to determine whether or not this was admissible by preponderance of the evidence. And I think especially against that backdrop, it's very difficult to come in here and look at the case and look at the guilty verdict, and with the benefit of hindsight say, well, you really didn't need this extra evidence. Counsel, is there a Supreme Court case where the United States Supreme Court has clearly applied Dover in the criminal context? Not that I'm aware of, Your Honor. Me neither. I know we've done it at the circuit level. Don't mishear me. I don't mean to scare you. I know we've done it at the circuit level, but do you have any indication, any speculation in your minute left about what the Supreme Court would do with applying Dover in the criminal context? Well, Your Honor, fortunately, I don't have to look that far because I can stop right at the Eighth Circuit. I can give you five cases, Molina, Ortega, Brown, Ginetta, and Schwartz, all involving issues just like this. And what does Molina say about it? Does Molina say the issue in that case involved proof positive of drug trafficking activity? No. It says it takes this otherwise legitimate item, puts it in context, and shows the jurors what potential use of it a drug trafficker might make. There are lots of mites and maize in there which go against a finding of prejudice. I don't think you have our bath salt case in there. Read the five cases you have again. I've got Molina, Ortega, Brown, Ginetta, and Schwartz. And, Your Honor, one thing, as long as we're talking about cases that you yourself are responsible for, I would remind you of a case called Peña Ponce. And in that case, there was an image of Santa Muerte, just one, mind you, located in a car. And it was counted among the suspicious factors that gave the officer reasonable suspicion to investigate. Now, I understand reasonable suspicion to investigate is a separate standard, but I think that's sort of a tacit admission, and a correct one on your part, that yes, this evidence does have potential relevance. And so I would submit to Your Honors that Mr. Almonte, through his many years of law enforcement, and through his thousands of hours of research on this particular issue, and his personal involvement in cases, he was qualified to give that testimony. The testimony was highly relevant to establishing the baseline conspiracy to which Mr. Holmes and Mr. Rendon joined. And finally, it was reliable, because it was tied directly to observation, which Kumho, Tyer, and countless other Supreme Court and Eighth Circuit cases recognize as a legitimate basis for specialized testimony. Thank you. Thank you, Mr. Morgan. Your Honor, in my brief period, I wanna just point out that, to the confusion points you were making, the jury was out nine hours over two days. They sent three notes. They were struggling with this case. Now, I wanna make sure that the tools of the trade issue is clearly addressed. It's my understanding of the law that tools of the trade, such as scales, cameras, radio scanners, and stuff, can be used to rebut a defense, that can come in to rebut a specific defense. In this particular case... Can it come in to show intent to distribute? Baggies, and scales, and that sort of thing. In terms of a drug courier type profile, is what... Drug conspiracy. Excuse me? A drug conspiracy. Well... You have to have a conspiracy with the intent to distribute typically. But I'm talking about in terms of a drug courier profile. When you're looking at religious icons, as they relate to... There is a... Well, there is an issue regarding Mexican drug cartels with these icons, and so there's gotta be drug activity going on. That's like... I'm alleging that... I'm arguing that that's analogous to a drug courier type profile. And so, it's a tools of the trade where... Now, my client did not assert a specific defense, so this was put on right off the bat. It was not used to rebut any sort of defense that my client did. And so, it was used, there was no limiting instruction, and it confused the jury, and my client didn't get a fair trial, Your Honor. Thank you. Thank you.